IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARACELI TELLEZ,

    Plaintiff,

vs.                                                                            Civ. No. 16-141 KG/KK

BIMBO BAKERIES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon two motions: (1) Defendant Bimbo Bakeries USA, Inc.'s Partial Motion to Dismiss Plaintiff's Complaint and supporting memorandum (collectively, Motion to Dismiss) brought under Fed. R. Civ. P. 12(b)(1) and filed on March 7, 2016; and (2) Plaintiff Araceli Tellez's Opposed Motion to Amend Complaint (Motion to Amend), filed on May 13, 2016. (Docs. 7, 8 and 22). Defendant Bimbo Bakeries USA, Inc. (BBU) argues in the Motion to Dismiss that the Court lacks subject matter jurisdiction because Plaintiff Araceli Tellez (Ms. Tellez) failed to exhaust her administrative remedies under the New Mexico Human Rights Act (NMHRA). Ms. Tellez seeks to amend her complaint to include a sentence stating that she has exhausted her administrative remedies. Both motions are now fully briefed, including supplemental briefing requested by the Court. (Docs. 11, 13, 23, 43 and 44).

Having considered the Motion to Dismiss, the Motion to Amend, the Complaint for Discrimination on the Basis of Race, Sex and Retaliation (Complaint) (Doc. 12-1), and all of the briefing, the Court grants the Motion to Dismiss as it relates to Ms. Tellez's race discrimination claim and denies the Motion to Dismiss as it relates to her sex discrimination claim. The Court also grants the Motion to Amend, in part, to allow Ms. Tellez to assert that she has exhausted her

administrative remedies with respect to her sex discrimination claim.  The Motion to Amend as it relates to the dismissed race discrimination claim is denied as moot.

A.  Background

    *1.  The Charge of Discrimination*

Prior to filing this lawsuit, Ms. Tellez completed a Charge of Discrimination (Charge) with the New Mexico Department of Workforce Solutions, Human Rights Bureau.  (Doc. 8) Ex. B at 1.  In the section of the Charge describing the basis for her claims of discrimination, Ms. Tellez checked boxes for both race and sex.  *Id.*  In her narrative, Ms. Tellez described how BBU denied her transfer to another location even though she knew the company previously had approved the transfer of "a Black male by the name of Willie" under similar conditions.  *Id.*  Ms. Tellez concluded the Charge by stating, "I believe I was discriminated against due to my race (White) and my sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended."  *Id.*  The Charge was dated April 6, 2015, and signed by Ms. Tellez.  *Id.*  Directly above her signature was the statement, "I declare under penalty of perjury that the above is true and correct."  *Id.*

Ms. Tellez signed an Amended Charge (Amended Charge) on June 5, 2015, again under penalty of perjury.  *Id.* at 2.  This time, in addition to checking boxes for race and sex, Ms. Tellez checked a third box, indicating discrimination based on disability.  *Id.*  Ms. Tellez also edited the narrative section to include facts supporting a claim of discrimination in violation of the Americans with Disabilities Act (ADA).  *Id.* at 2-3.  Ms. Tellez made no changes to her prior claims of discrimination based on race and sex.  *Id.*  The Amended Charge specifically indicated that Ms. Tellez's race discrimination claim was due to her White race.  *Id.* at 3.

*2. The Complaint*

Ms. Tellez filed a Complaint in the Second Judicial District Court on November 30, 2015, alleging that BBU discriminated against her because she is Hispanic and a female. (Doc. 12-1.) at ¶¶ 6 and 20-25. She asserted three Counts against BBU: race discrimination under the NMHRA (Count I), sex discrimination under the NMHRA (Count II) and retaliation under the Family and Medical Leave Act (FMLA) (Count III). *Id.* at ¶¶ 20-30. BBU removed the matter to this Court on the basis of federal question jurisdiction related to the FMLA claim.

Ms. Tellez alleges in her Complaint that, after working for BBU for a little over a year, she requested time off to visit her ailing mother in California. (Doc. 12-1) at ¶¶ 5 and 8. Ms. Tellez was approved for time off and used vacation leave, but was not offered any leave under the FMLA. *Id.* at ¶¶ 9-10. Further, BBU warned Ms. Tellez that her job could not be held open for long and asked if she would be interested in transferring to BBU's Escondido, California location. *Id.* at ¶ 9. Ms. Tellez claims that after she moved to California, she was told that BBU did not allow transfers, despite the fact that Ms. Tellez was aware of a male employee who had been allowed to transfer from out of state to BBU's Albuquerque location. *Id.* at ¶¶ 13-14. Following instructions given by BBU's Human Resources Representative, Ms. Tellez resigned her position with BBU in Albuquerque and began applying with BBU's Escondido location. *Id.* at ¶¶ 15-16. Ms. Tellez was unable to obtain a position with BBU in Escondido and ultimately moved back to Albuquerque to find work. *Id.* at ¶¶ 16-17. She was unemployed for over six months before accepting a job making $5.00 less an hour than she made at BBU. *Id.* at ¶ 18.

*3. The Proposed Amended Complaint*

Ms. Tellez seeks to amend her Complaint to add a sentence stating that she exhausted her administrative remedies. (Doc. 22) at 2. After filing a Charge with the EEOC on April 6, 2015,

3

and an Amended Charge on June 5, 2015, Ms. Tellez received an Order of Non-Determination from the New Mexico Human Rights Bureau on September 2, 2015.  *Id.*  Ms. Tellez then filed her Complaint alleging violations of the NMHRA on November 30, 2015, within the ninety (90) day time limit required by the NMHRA.  *Id.*  Ms. Tellez alleges that allowing the proposed amendment to her Complaint will resolve the issue of jurisdiction.  *Id.* at 1.

B. Discussion

    *1. Rule 12(b)(1) Standard*

"Federal courts are courts of limited jurisdiction."  *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted).  The court presumes "that a cause lies outside of [its] limited jurisdiction" until the party asserting jurisdiction proves otherwise.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In cases like this, where a Rule 12(b)(1) motion "challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's factual allegations."  *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (internal quotation omitted).  "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.*  "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Campos v. Las Cruces Nursing Ctr.*, 828 F.Supp.2d 1256, 1265 (D.N.M. 2011) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-413 (5th Cir. 1981)).

"Exhaustion of administrative remedies is a prerequisite to suit under the NMHRA, and a failure to exhaust administrative remedies may mean that the court lacks subject-matter

jurisdiction." *Gerald v. Locksley*, 785 F.Supp.2d 1074, 1088 (D.N.M. 2011) (citations omitted). A district court must dismiss an unexhausted claim for lack of subject matter jurisdiction. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (considering effect of failure to exhaust under Age Discrimination in Employment Act). "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002) (citing *United States. v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1278 (10th Cir. 2001)).

"To exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the NMHRA or the EEOC making *sufficient allegations to support the complaint*; and (ii) receive an order of nondetermination from the NMHRA." *Campos*, 828 F.Supp.2d at 1267 (emphasis added). "Each discrete incident of [discriminatory or retaliatory] treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Daneshvar v. Graphic Tech., Inc.*, 237 Fed.Appx. 309, 313 (10th Cir. 2007) (quotation omitted). The United States Court of Appeals for the Tenth Circuit has stated that the purposes of exhaustion are "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1185 (10th Cir. 2007) (discrimination claims brought under ADA).

In her EEOC Charge, Ms. Tellez originally identified claims for discrimination on the basis of race and sex, claiming she was denied a transfer due to her White race and female sex. (Doc. 8) Ex. B at 1. By filing the Charge describing discrimination on the basis of her female sex and receiving the Order of Non-Determination from the NMHRA on September 2, 2015, Ms. Tellez plainly exhausted her administrative remedies for her sex discrimination claim. *Id.*; (Doc.

5

22) at 2.  Accordingly, BBU's Motion to Dismiss is denied as it relates to the claim of discrimination based on sex.

In contrast, the Court finds that Ms. Tellez has not exhausted her administrative remedies for her race discrimination claim.  Ms. Tellez's Charge and Amended Charge both alleged discrimination on the basis of her White race. (Doc. 8) Ex. B at 1-2.  Ms. Tellez cannot show that she filed a complaint with the EEOC making "sufficient allegations to support [a] complaint" for discrimination based on her Hispanic race.  *Campos*, 828 F.Supp.2d at 1267.  For the reasons described herein, BBU's Motion to Dismiss claim is granted as it relates to Ms. Tellez's race discrimination claim.

Prior to filing her Complaint, Ms. Tellez never made any claim of discrimination on the basis of being Hispanic.  In her EEOC Charge, Ms. Tellez originally described discrimination on the basis of her White race, claiming she was denied a transfer while a black male employee was permitted to move locations within BBU. (Doc. 8) Ex. B at 1.  Even when Ms. Tellez later amended her Charge to add a claim of discrimination based on disability, she did not make any changes to her allegation of race discrimination based on her White race.  *Id.* at 2.

Ms. Tellez asserts that the characterization of her race as White on the Charge form was due to an error by the EEOC and that she should not be penalized for the EEOC's mistake. (Doc. 11) at 3.  Ms. Tellez provided the Court with an affidavit from the EEOC Area Director admitting that Ms. Tellez indicated she was Hispanic on the Intake Questionnaire and acknowledging the EEOC's error in failing to specify that Ms. Tellez was claiming discrimination based on her Hispanic race. (Doc. 44) Ex. C.  Ms. Tellez further claims that the EEOC does not make a distinction between White and Hispanic races. (Doc. 44) at 2.  She cites EEOC's Introduction to Race and Ethnic (Hispanic Origin) Data for the Census 2000 Special

6

EEO File, to suggest that "a Hispanic can be classified as multiple races." (Doc. 44) at 3, Ex. A at 1. Ms. Tellez also claims that she was unaware that she could change or correct the EEOC's race description. (Doc. 11) at 3.

Nonetheless, Ms. Tellez alleges that BBU was not prejudiced by the EEOC's erroneous description of her race as White because the race box on the Charge form was checked, putting BBU on notice that she was asserting discrimination based on race. (Doc. 11) at 3. Ms. Tellez claims that her employer knew she was Hispanic, not White, because she had worked there for more than a year and her surname is Hispanic. *Id.* Moreover, Ms. Tellez testified at her deposition that she felt more comfortable speaking Spanish. (Doc. 44) at 5. Ms. Tellez contends that all these facts demonstrate that BBU had sufficient notice that she was Hispanic when she filed her Charge of discrimination. *Id.* at 6.

BBU argues that it would be discriminatory to require the company to assume Ms. Tellez's race based on anything besides her actual claim as set forth in the Charge. (Doc. 8) at 6. Where both the Charge and Amended Charge indicated that Ms. Tellez alleged discrimination based on her "White" race, BBU asserts that it reasonably treated her claim as one for reverse discrimination. (Doc. 43) at 1, 4-5 and 7.[1] BBU also asserts that Ms. Tellez never alleged any discrimination based on Hispanic race prior to filing the Complaint; therefore, the purposes of exhaustion, i.e. notice and the opportunity to conciliate, are not satisfied. *Id.* at 7. BBU further asserts Ms. Tellez cannot now pursue claims not previously raised in the Charge or exhausted in the administrative process. *Id.*

---

[1] In its Supplemental Brief, BBU describes how a *prima facie* case for reverse discrimination requires a heightened standard than traditional discrimination. (Doc. 8) at 7, (Doc. 43) at 2, 4-5. BBU claims this distinction significantly impacted its investigation and analysis of Ms. Tellez's claim, as well as its determination that Ms. Tellez would not be able to establish her *prima facie* case based on the heightened standard. *Id.*

7

*a. Analysis*

The Court agrees that an employer should not be forced to assume the nature of an employee's discrimination claims.  Indeed, racial identity may not always be ascertained by appearance or surname.  *United States v. Esparsen*, 930 F.2d 1461, 1466 (10th Cir. 1991). Moreover, both Ms. Tellez's Charge and Amended Charge specifically characterized her race as White, and BBU reasonably relied on those allegations.  (Doc. 8) at Ex. A and B.  Ms. Tellez has not provided any evidence that she sufficiently notified to BBU that she was making any claim of discrimination based on her Hispanic race prior to her Complaint.  Accordingly, the Court rejects the argument that BBU should have known Ms. Tellez's race based on her time of employment, Hispanic surname, and preference for speaking Spanish.

As to Ms. Tellez's claim that the EEOC does not make a distinction between White and Hispanic races, the Court notes that the very EEOC guide cited by Ms. Tellez actually contradicts her argument.  (Doc. 44) Ex. A at 1.  The EEOC guide describes "White" and "Hispanic or Latino" as separate racial/ethnic categories and specifically notes that "[t]he White category is defined by the White not Hispanic or Latino category".  *Id.*  Ms. Tellez also claims that her Complaint for race discrimination on the basis of Hispanic race is reasonably related to her EEOC Charge.  (Doc. 44) at 5.  However, a claim based on White race is plainly distinct from a claim based on Hispanic race, particularly where the legal requirements for establishing *prima facie* discrimination are different when a party alleges reverse discrimination.  (Doc. 43).

Specifically, the New Mexico Supreme Court utilizes the burden shifting method set forth in *McDonnell Douglas Corp. v. Green*, requiring the complainant to "carry the initial burden…of establishing a prima facie case of racial discrimination."  411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973).  "This may be done by showing (i) that he belongs to a racial minority; (ii)

that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* The Tenth Circuit has articulated and adopted a modified *McDonnell Douglass* formulation for establishing a *prima facie* case of reverse discrimination. *Notari v. Denver Water Dept.*, 971 F.2d 585, 589 (10th Cir. 1992). "A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Id.* (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949 (1978)). The Court explained "that it is appropriate to adjust the prima facie case to reflect the reverse discrimination context of a lawsuit because the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group." *Id.* (internal quotations omitted).[2] Because the two legal standards for discrimination and reverse discrimination are different, BBU's ability to accurately evaluate Ms. Tellez's claim was impacted by the classification of her race as White, rather than Hispanic.

Even so, Ms. Tellez alleges that she should not be held accountable for the EEOC's erroneous mischaracterization of her race as White. (Doc. 11) at 3. The Court finds both the affidavit from the EEOC Area Director and the Intake Questionnaire largely irrelevant where there is no evidence that the EEOC actually investigated, or that BBU had notice of, any claim of

---

[2] The New Mexico Supreme Court has granted *certiorari* in *Garcia v. Valley Pub. Schs.*, 2016-NMCA-034, a case in which the New Mexico Court of Appeals changed the standard for reverse discrimination cases under the NMHRA, departing from the Tenth Circuit's heightened standard from *Notari*. The Court agrees with BBU that because the case was decided after Plaintiff's Complaint was filed, it did not impact BBU's analysis. Likewise, it has no bearing on the Court's reasoning herein.

discrimination based on Ms. Tellez's Hispanic race. "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City and Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). While a court will "liberally construe" a party's EEOC charge, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

Although Ms. Tellez checked the box representing that she is Hispanic on the Intake Questionnaire, she failed to clarify or correct the basis for her race claim when she reviewed and signed the Charge. (Doc. 8) Ex. B at 1-2. There is no evidence that BBU had any reason to believe Ms. Tellez was asserting a claim of discrimination on the basis of Hispanic race where the Charge specifically stated otherwise. "A plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself. Not only would this be circumventing the role of the Commission, but it would be prejudicial to the employer." *Green v. JP Morgan Chase Bank Nat. Ass'n*, 501 Fed.Appx. 727, 731 (10th Cir. 2012) (quotation omitted). "[P]ermitting Title VII plaintiffs to routinely reach back to the contents of intake questionnaires to expand the scope of a subsequent lawsuit would, if not eviscerate, then at the very least significantly undermine the policies underlying the exhaustion requirement Congress decided to impose upon Title VII plaintiffs." *Id.* at 731-732 (quotation omitted). "Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation." *Atkins v. Sw. Bell Tel. Co.*, 137 Fed.Appx. 115, 118 (10th Cir. 2005) (internal quotation omitted) (determining employee failed to adequately exhaust administrative remedies for retaliation claim and therefore court lacked jurisdiction to hear claim where Plaintiff raised retaliation claim in intake questionnaire and affidavit but not in formal charge with EEOC).

Finally, while Ms. Tellez claims that she did not know that she could correct her Charge, BBU correctly points out that Ms. Tellez did, in fact, amend her Charge. (Doc. 11) at 3, (Doc. 13) at 2. Ms. Tellez also reviewed and signed both the Charge and the Amended charge under penalty of perjury. (Doc. 8) at Ex. A and B. At no point prior to the filing of her Complaint did Ms. Tellez allege any discrimination based on her Hispanic race.

There is nothing in the Charge or other documentation to indicate EEOC investigated claims based on Hispanic race or that BBU had any notice of such claims. Therefore, Ms. Tellez failed to exhaust her administrative remedies for a claim of discrimination based on her Hispanic race and BBU's Motion to Dismiss the race discrimination claim is properly granted.

*2. The Motion to Amend*

"[A] party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). A proposed amendment is futile if it fails to cure the deficiencies of the complaint. *Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 559 (10th Cir. 1997).

In her proposed amended Complaint, Ms. Tellez seeks to add a sentence stating she exhausted her administrative remedies. (Doc. 22) at 2 and Ex. A at ¶ 4. Pursuant to the Court's previous analysis that Ms. Tellez failed to exhaust her administrative remedies for the claim of discrimination based on her Hispanic race, amendment of the Complaint as requested would be futile. Therefore, the Motion to Amend is denied as to the race discrimination claim. The Court finds that where Ms. Tellez properly exhausted her administrative remedies as to the sex discrimination claim, the Motion to Amend is properly granted as to that claim.

IT IS ORDERED that

1. the Motion to Dismiss (Doc. 7) is granted, in part, and denied, in part;

2. the Motion to Amend (Doc. 22) is granted, in part, and denied, in part;

3. Plaintiff's discrimination claim based on Hispanic race is dismissed without prejudice; and

4. Plaintiff may amend her Complaint to establish that she has exhausted her administrative remedies as to the sex discrimination claim.

_____
UNITED STATES DISTRICT JUDGE