IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARACELI TELLEZ,

Plaintiff,

vs. Civ. No. 16-141 KG/KK

BIMBO BAKERIES,

Defendant.

MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

This matter comes before the Court on Defendant Bimbo Bakeries' Motion and Memorandum in Support of Summary Judgment, brought under Fed. R. Civ. P. 56, and filed on October 24, 2016. (Doc. 42). Defendant Bimbo Bakeries USA, Inc. (BBU) argues that Plaintiff Araceli Tellez (Ms. Tellez) cannot state a claim for sex discrimination under the New Mexico Human Rights Act (NMHRA) or claims for retaliation or interference under the Family and Medical Leave Act (FMLA), as asserted in her Amended Complaint for Discrimination on the Basis of Sex and Retaliation. (Doc. 53). BBU seeks summary judgment in its favor as a matter of law on all of Plaintiff's claims. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion should be granted.

I. Procedural Background

Ms. Tellez filed a Complaint in state court, alleging BBU discriminated against her because she is Hispanic and a female. (Doc. 12-1) at ¶¶ 6 and 20-25. She asserts three Counts against BBU: race discrimination under the NMHRA (Count I), sex discrimination under the

NMHRA (Count II), and retaliation[1] under the Family and Medical Leave Act (FMLA) (Count III). *Id.* at ¶¶ 20-30. BBU removed the matter to this Court on the basis of federal question jurisdiction related to the FMLA claim. (Doc. 1).

BBU then filed a Partial Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, alleging Ms. Tellez failed to exhaust her administrative remedies under the NMHRA with respect to the race and sex discrimination claims. (Doc. 7 at 1). The Court granted BBU's Partial Motion to Dismiss as to the race discrimination claim and granted Ms. Tellez's Motion to Amend her Complaint to include a statement that she properly exhausted her administrative remedies with respect to the sex discrimination claim. (Docs. 48 and 49). BBU subsequently filed this Motion for Summary Judgment, seeking dismissal of all remaining claims.

II. The Amended Complaint

In her Amended Complaint, Ms. Tellez alleges that after working for BBU for a little over a year, she requested time off to visit her ailing mother in California. (Doc. 53 at ¶¶ 5 and 8). Ms. Tellez was approved for the time off and used vacation leave, but she claims she was not offered any leave under the FMLA. *Id.* at ¶¶ 9-10. Ms. Tellez states that BBU warned her that her job could not be held open for long and asked whether she would be interested in transferring to BBU's Escondido, California location. *Id.* at ¶ 9. Ms. Tellez claims that after she moved to California, she was told that BBU did not allow transfers, despite the fact that Ms. Tellez was aware of a male employee who had been allowed to transfer from out of state to BBU's Albuquerque location. *Id.* at ¶¶ 13-14. As instructed by BBU's Human Resources

[1] Ms. Tellez's retaliation claim under the FMLA alleges that BBU "interfered" with her right to FMLA leave. As described herein, retaliation and interference are distinct claims under the FMLA. Both claims were briefed and are considered herein.

Representative, Ms. Tellez resigned her position with BBU in Albuquerque and began applying with BBU's Escondido location. *Id.* at ¶¶ 15-16. Ms. Tellez was unable to obtain a position with BBU in Escondido and ultimately moved back to Albuquerque to find work. *Id.* at ¶¶ 16-17. She was unemployed for over six months before accepting a job making $5.00 less an hour than she made at BBU. *Id.* at ¶ 18.

III. Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that a genuine issue of material fact exists. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891. Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is *genuine*; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could

find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997) (internal quotation marks omitted) (emphasis added).

IV. Discussion

Because Ms. Tellez's FMLA claims provide the basis for this Court's jurisdiction, those claims are addressed first.

A. *FMLA Claims*

The FMLA helps ensure employees get leave to care for an immediate family member suffering from a serious health condition. 29 U.S.C. § 2612(a)(1). Employees are eligible for FMLA benefits if they have worked for an employer for at least 12 months and at least 1,250 hours within those 12 months. *Id.* at § 2611(2)(A). The FMLA does not require an eligible employee to specifically ask for FMLA benefits; if the employer is on notice that an employee might qualify for FMLA benefits, the employer has a duty to inform the employee that FMLA coverage may apply. *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001) (explaining employer who placed employee on sick leave was on notice plaintiff might qualify for FMLA and had duty to inform employee of FMLA rights).

For employees whose FMLA rights have been violated, Section 2615 provides two distinctive theories for recovery: (1) interference/entitlement and (2) retaliation/discrimination. *See Dry v. Boeing Co.*, 92 Fed. Appx. 675, 678 (10th Cir. 2004) (citing 29 U.S.C. § 2615(a)) ("We identified subsection (a)(1) as the 'interference/entitlement theory' and subsection (a)(2) as the 'retaliation/discrimination' theory."). "Beyond differences in the elements and burdens of proof, the two claims differ with respect to the timing of the adverse action." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). An interference claim arises when an employer makes an adverse employment decision before the employee has been

allowed to take FMLA leave or while the employee is still on FMLA leave. *Id.* A retaliation claim "may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." *Id.*

i. FMLA Interference

Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To prevail on an interference theory, Ms. Tellez must demonstrate: "(1) that [s]he was entitled to FMLA leave, (2) that some adverse action by [BBU] interfered with [her] right to take FMLA leave, and (3) that [BBU's] action was related to the exercise or attempted exercise of [her] FMLA rights." *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005). Under the interference theory, any denial, interference, or restraint of an employee's FMLA rights is a violation, regardless of the employer's intent. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004) (internal citation omitted); *see also Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) (explaining FMLA's creation of substantive rights such that deprivation of right would violate FMLA regardless of employer intent); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999) (requiring employee to demonstrate only entitlement to leave because employer intent immaterial).

Ms. Tellez alleges she "was eligible to take FMLA leave to care for her ailing mother." (Doc. 53 at ¶ 24). BBU did not offer any evidence to contradict this assertion and neither party addressed whether Ms. Tellez's mother suffered from a "serious health condition" under the FMLA. (Doc. 46 at 12). For the purposes of this Motion, the Court considers the first element of the interference claim satisfied, and finds that Ms. Tellez was entitled to FMLA leave.

To satisfy the second element of her interference claim, Ms. Tellez must show that she "was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Campbell*, 478 F.3d at 1287. Ms. Tellez alleges in her Amended Complaint that she "should have been offered FMLA and not misled about transfers and being forced to resign." (Doc. 53 at ¶ 25). Ms. Tellez claims she was "misled" and "forced to resign" after being told by both Union President Earl Reed and Ms. Del Campo that she could transfer to California. (Doc. 46 at 13). She also claims that she was "entitled to her former job with the same pay and benefits." *Id.* at ¶ 26.

BBU argues that Ms. Tellez cannot establish that BBU took any adverse action that interfered with her right to take FMLA leave. (Doc. 42 at 8). On the contrary, BBU provides evidence that Ms. Tellez was advised of her right to take FMLA leave, including BBU Human Resources Representative Jasmine Del Campo's testimony and contemporary written notes. (Doc. 50 at 9). Ms. Tellez acknowledges that "Mr. Reed, the Union President, told [her] there [was] FMLA." (Doc. 46 at 15). Furthermore, Ms. Tellez admits that she did not apply for any FMLA leave. (Doc. 42-1 at 11, citing Tellez Dep. 31:20-21). In her deposition, Ms. Tellez admits that Ms. Del Campo did not tell her she could transfer. ((Doc. 46 at 13; Doc. 42-1 at 10, citing Tellez Dep. 28:2-3). Even if Mr. Reed incorrectly informed Ms. Tellez that she could transfer, the record shows he was a union employee and not a representative of BBU. (Doc. 50 at 7). Moreover, Ms. Tellez admits that Ms. Del Campo expressly informed her via text messages that BBU could not do transfers. *Id.* at 12-13 (citing Tellez Dep. 40:13-41:17).

It is undisputed that Ms. Tellez was aware that FMLA benefits were available and that BBU fulfilled its duty to inform Ms. Tellez that FMLA coverage might apply. Despite Ms. Tellez's mere allegations in the Amended Complaint that BBU never told her about her options

under FMLA and that she did not know what to do to get FMLA, there is no evidence that BBU prevented her from applying for and taking FMLA leave, denied her FMLA leave, or denied her reinstatement following FMLA leave. (Doc. 46 at 13, 15). Ms. Tellez was fully aware she could not transfer at the time of her resignation. (Doc. 46-3 at 1). Her resignation letter clearly states that she is resigning "due to not being able to make a transfer…." *Id.* Ms. Tellez has not offered any evidence to show either an adverse employment action by BBU or that BBU interfered with her taking FMLA leave. Thus, she cannot satisfy the second element of her FMLA interference claim.

Assuming *arguendo* that Ms. Tellez could establish that BBU interfered with her FMLA leave, BBU would bear the burden of proof to show that its action was not related to Ms. Tellez's exercise or attempted exercise of her FMLA rights. *Campbell*, 478 F.3d at 1287 (internal quotation and citation omitted). Ms. Tellez argues that BBU cannot prove that she would have been dismissed were it not for her request for FMLA leave because there were no documented issues with her job performance. (Doc. 46 at 13); *see also Campbell*, 478 F.3d at 1289 (citation omitted). This argument is irrelevant where both Ms. Tellez and BBU agree that Ms. Tellez did not request FMLA benefits. (Doc. 42-1 at 11, citing Tellez Dep. 31:20-21). Without any request for FMLA leave, BBU's actions, even if viewed in the light most favorable to Ms. Tellez, are simply not sufficiently "related to" Ms. Tellez's FMLA rights to establish a claim for interference. Because no genuine issue of fact remains as to whether BBU interfered with Ms. Tellez's FMLA leave, BBU's summary judgment motion will be granted as to the FMLA interference claim.

ii. FMLA Retaliation

FMLA retaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (internal citations omitted). Ms. Tellez has the initial burden of establishing a *prima facie* retaliation case by showing that: "(1) she engaged in a protected activity; (2) [BBU] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Id.* at 1171. Once the *prima facie* case is established, BBU must offer a "legitimate, nonretaliatory reason" for the employment action. *Id.* at 1172. Ms. Tellez then bears the ultimate burden to prove BBU's retaliatory intent, either by direct evidence or by showing that the reasons offered are merely a pretext. *Id.*; *see also Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1263 (10th Cir. 1998) (explaining that plaintiff has ultimate burden of demonstrating that challenged employment decision was result of intentional retaliation).

BBU claims first that Ms. Tellez cannot establish a *prima facie* case of FMLA retaliation. BBU cites a Tenth Circuit case holding that lawfully *taking* FMLA leave is a prerequisite to a retaliation claim, and observes that Ms. Tellez never took any FMLA leave, thereby not satisfying that prerequisite. (Doc. 42 at 9) (citing *Wilkins v. Packerware Corp.*, 260 Fed.Appx. 98, 103 (10th Cir. 2008) (unpublished)). However, the Tenth Circuit specifically clarified that *Wilkins* only addressed *eligibility* for FMLA leave in order to bring a retaliation claim, not whether the plaintiff must actually take FMLA leave. *Wehrley v. Am. Family Mut. Ins. Co.*, 513 Fed.Appx. 733, 742 (10th Cir. 2013) (unpublished) (emphasis added). Following other circuits, the Court concluded that simply notifying an employer of the intent to take FMLA leave is also a protected activity under FMLA. *Id.* (emphasizing that failure to treat notice as protected activity "would lead to an absurd result—an employee would be unprotected from retaliation during the

thirty or more days prior to taking FMLA leave"). Therefore, the fact that Ms. Tellez did not actually take FMLA leave is not fatal to her retaliation claim if she can demonstrate that she notified BBU of her intent to take FMLA leave by requesting it, a protected activity.

Ms. Tellez argues that she was not required to "expressly assert rights under the FMLA or even mention the FMLA" in order to "request" FMLA benefits. (Doc. 46 at 14, citing *Been v. N.M. Dept. of Info. Tech.*, 815 F.Supp.2d 1222, 1241 (D.N.M. 2011) (considering employer on notice plaintiff might qualify for FMLA benefits when first informed of plaintiff's pregnancy)). By speaking with BBU's Human Resources Representative about her mother's illness and her need to go to California, Ms. Tellez claims she "requested" FMLA under the FMLA's liberal view of what is considered a request. *Id.* Ms. Tellez relies on *Been* to allege she "requested" FMLA leave and that her "request" was a protected activity sufficient to satisfy the first element of a *prima facie* case of FMLA retaliation. *Id.* *Been* is distinct from this case. *Id.* The plaintiff in *Been* had informed her employer that she was pregnant. She then followed up by requesting FMLA paperwork and specifically asked that her absence be covered by FMLA leave. *Been*, 815 F.Supp.2d at 1241. The plaintiff was then terminated while absent from work. *Id.* That court found the plaintiff had "asserted" her rights under the FMLA rights prior to the termination. *Id.*

Here Ms. Tellez's conversation about taking time off to travel to California to care for her sick mother was sufficient only to put BBU on notice that she might *qualify* for FMLA. Indeed, notice that an employee may qualify for FMLA benefits is not the same as notice that the employee is actually exercising FMLA rights by seeking leave. *See Gonzales v. City of Albuquerque*, 849 F.Supp.2d 1123, 1183 (D.N.M. 2011) (finding plaintiff failed to establish she elected to take FMLA leave). Generally, an employer has a right to some advance notice from

an employee that the employee intends to take FMLA leave. 29 C.F.R. § 825.100(d); *see also Ney v. City of Hoisington, Kan.*, 508 F.Supp.2d 877, 888 (D. Kan. 2007) (finding plaintiff unable to establish *prima facie* case of FMLA retaliation where no genuine issue of material fact existed that she failed to take FMLA leave and no reasonable jury could find otherwise). The critical inquiry to determine retaliation is not whether Ms. Tellez *had* notice that FMLA benefits were available, but whether Ms. Tellez *gave* BBU any notice that she intended to utilize those FMLA benefits.

Even drawing all proper inferences in favor of Ms. Tellez, the record is devoid of any evidence that she requested FMLA paperwork, applied for FMLA leave, or articulated any intent to utilize FMLA benefits sufficient to put BBU on notice. "[M]erely qualifying for [FMLA] leave is insufficient under the first prong of the *prima facie* test." *Ney*, 508 F.Supp.2d at 887. Indeed, Ms. Tellez cannot establish that she engaged in an FMLA protected activity; therefore, she cannot establish a *prima facie* case for FMLA retaliation.

Even if Ms. Tellez's "request" was enough to show that she engaged in a protected activity, to satisfy the second prong of her FMLA retaliation claim, she must nevertheless demonstrate that BBU took some action that a reasonable employee would have found materially adverse. Having failed to demonstrate that BBU terminated Ms. Tellez, she must then show that BBU constructively discharged her.

To state claim for constructive discharge, a plaintiff must allege facts sufficient to demonstrate that a reasonable person would have viewed the working conditions as intolerable. *See Derr v. Gulf Oil Co.*, 796 F.2d 340, 343-44 (10th Cir. 1986). A plaintiff must show that the employer "made working conditions so difficult that a reasonable person in [her] position would feel compelled to resign." *See Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir.

2004) (internal quotation and citation omitted). "Essentially, a plaintiff must show that she had no other choice but to quit. The conditions of employment must be *objectively intolerable*; the plaintiff's subjective views of the situation are irrelevant." *Id.* (internal quotation and citation omitted) (emphasis added). "The bar is quite high" for proving constructive discharge. *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002).

Indeed, a plaintiff that voluntarily resigns from employment cannot claim that she was constructively discharged. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004); *see also Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997) (concluding that, despite difficult working conditions, plaintiffs had opportunity to make free choice regarding their employment); *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000) (finding that employee forced to choose between resignation and termination was not constructively discharged because decision was voluntary). "A resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice." *Yearous*, 128 F.3d at 1356 (internal quotation and citation omitted).

"Whether a constructive discharge occurred is a question of fact." *Strickland v. United Parcel Service, Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009) (citation omitted). To determine whether a jury question exists as to the voluntariness of an employee's resignation, the Court considers "the totality of the circumstances under an objective standard." *Yearous*, 128 F.3d at 1356. To make this determination, the Court considers several factors including: "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [s]he was given; (3) whether the employee was given a reasonable time

in which to choose; and (4) whether [s]he was permitted to select the effective date of resignation." *Id.* (internal quotation and citation omitted).

Ms. Tellez alleges BBU constructively discharged her by incorrectly informing her she could transfer to a position in California and instructing her to resign from her Albuquerque position. (Doc. 46 at 2). She argues that BBU knew that her mother was ill and that she intended to travel to California to care for her mother. *Id.* at 9. Ms. Tellez claims that other employees were allowed to transfer. *Id.* at 15. She also states that when she moved back to Albuquerque, she reapplied with BBU, but was not offered a position. *Id.* at 15-16. Ms. Tellez alleges that these kinds of personal circumstances can "amount to intolerable working conditions." *Id.* at 10 (citing *Vann v. Southwestern Bell Tel. Co.*, 179 Fed.Appx. 491, 499 (10th Cir. 2006) (unpublished)).

Even viewed in a light favorable to Ms. Tellez, the evidence does not establish that Ms. Tellez's resignation was involuntary. To the contrary, when she resigned, Ms. Tellez had alternatives, including taking FMLA leave, returning to her Albuquerque employment, or taking a leave of absence under her union contract. (Doc. 50 at 8). Her resignation letter indicates she understood the nature of her decision. She clearly stated that even though she could not transfer to BBU's California location, she wanted to be closer to her parents because they were having health issues. (Doc. 46-3 at 1). Ms. Tellez had several weeks to make her decision, including time to move and seek other employment, before she selected the date of her resignation. (Doc. 46 at 9; Doc. 50 at 8). Once again, even when viewed in a light favorable to Ms. Tellez, the evidence does not support constructive discharge, and she cannot establish that BBU took any action a reasonable employee would have found materially adverse.

Where Ms. Tellez cannot establish the first two elements of her retaliation claim, there is no need to address the third element, a causal connection between the protected activity and the adverse action. Assumingly arguendo Ms. Tellez could prove she engaged in a protected act by informing BBU that she was traveling to California to assist her sick mother, and that BBU constructively discharged her, the evidence does not support finding any causal connection between the alleged "request" for FMLA leave and the alleged "constructive discharge." Moreover, Ms. Tellez has not offered any evidence of BBU's bad intent or retaliatory motive. *Campbell*, 1282 at 1287. Ms. Tellez's assertions alone, absent any corroborating evidence, are insufficient. *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment."). Under these circumstances, BBU is entitled to summary judgment on the FMLA retaliation claim.

      B. *NMHRA Sex Discrimination Claim*

For the reasons described herein, the Court grants summary judgment to BBU as to both of Ms. Tellez's federal FMLA claims, leaving her with a single state claim for sex discrimination in violation of the NMHRA. The state claim undoubtedly forms "part of the same case or controversy" as the FMLA claims resulting in this Court's jurisdiction. 28 U.S.C. § 1367(a). The Court therefore has the statutory authority to exercise supplemental jurisdiction over the state law claim. *Id.* "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if…the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). However, in the interest of judicial economy, the Court exercises supplemental jurisdiction over the remaining state claim as well.

The NMHRA makes it an unlawful discriminatory practice for an employer "to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against and person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition…" NMSU 1978, § 28-1-7(A) (Repl. Pamp. 2012). The *McDonnel Douglas* burden shifting analysis applies to claims of discrimination where, as here, no direct evidence of discrimination exists. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1201, 1315-16 (10th Cir. 1999); *Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M. 1990). Under the *McDonnell Douglas* framework, Ms. Tellez must first make a *prima facie* case of sex discrimination. If she can do this, the burden then shifts to BBU to demonstrate a legitimate, non-discriminatory reason for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a *prima facie* case for sex discrimination under the NMHRA, Ms. Tellez must show that (1) she belongs to a protected class; (2) she was qualified for her position; (3) despite those qualifications, she suffered an adverse employment action; and (4) her position was filled by someone not a member of the protected class. *Clayton v. Vanguard Car Rental U.S.A., Inc.*, 761 F.Supp.2d 1210, 1245 (D.N.M. 2010); *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998). As a female without any record of performance issues at work, Ms. Tellez satisfies the first two prongs. (Doc. 46 at 8). But because Ms. Tellez was not terminated, so as to satisfy the third prong, she must prove she suffered an adverse employment action.

As previously discussed at length, there is insufficient evidence to support constructive discharge. Although Ms. Tellez claims that she was "treated less favorably than other employees not in her protected class," the only "evidence" she offers to support this self-serving proposition is her testimony that a "male African-American was permitted to transfer" and that she was not.

(Doc. 46 at 8). BBU contradicts this allegation with direct evidence: the particular employee's paperwork establishes that he did not transfer, but instead reapplied at the Albuquerque location, just as Ms. Tellez was advised to do in California. (Doc. 50-1 at 3-20). BBU's direct evidence further shows there is no record that Ms. Tellez ever reapplied after she resigned. (Doc. 50-1 at 21). Finally, Ms. Tellez alleges that she was one of only six females at the Albuquerque Plant. (Doc. 46 at 11). This unsubstantiated fact, alone, is not evidence of any discrimination. The Court finds there is inadequate evidence to support Ms. Tellez's theory that BBU discriminated against her because she is a female. BBU is, therefore, entitled to summary judgment on the NMHRA sex discrimination claim.

V. Conclusion

For the foregoing reasons, the Court finds no genuine issue of material fact in need of resolution on any of Ms. Tellez's claims. Summary judgment disposition is proper in favor of BBU on all of the remaining claims in Ms. Tellez's Amended Complaint.

IT IS ORDERED that

1. the Motion to Dismiss (Doc. 42) is granted;
2. Summary judgment is entered in favor of BBU on Counts II and III of the Amended Complaint; and
3. Counts II and III will be dismissed with prejudice, thereby terminating this case.

UNITED STATES DISTRICT JUDGE